IN THE UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

FRANK A. CORSINI and
GIVE ECO ENERGY INC.,

     Plaintiffs,

     v.

GEORGE NICHOLAS, JR., DANIEL
KLEIN-MARCUSCHAMER, CHRISTOPHER
SCOTT, VERSA ENERGY PARTNERS LLC,
and VERSA BIOENERGIA LLC,

     Defendants.

DOCKET NO. 1:15-CV-13934

## COMPLAINT AND JURY DEMAND

### INTRODUCTION

This matter arises as a result of Defendants' actions and omissions constituting interference with advantageous contractual relationships, interference with advantageous business relationships, breach of fiduciary duty, trade secret misappropriation, violations of M.G.L. c. 93A, § 11 (i.e. the Massachusetts Consumer Protection Act), and breach of promissory note.

### PARTIES

1.     Plaintiff Frank A. Corsini ("Corsini") is a resident and citizen of East Dennis, Massachusetts.

2.     Plaintiff GIVE Eco Energy, INC. ("GIVE") is a corporation incorporated under the laws of Delaware with its principal place of business in East Dennis, Massachusetts.

3.     Corsini is the owner and Chief Executive Officer of GIVE.

4.      Defendant George Nicholas, Jr. ("Nicholas") is a resident and citizen of Palm Desert, California.

5.      Defendant Daniel Klein-Marcuschamer ("Klein") is a resident and citizen of San Francisco, California.

6.      Defendant Christopher Scott ("Scott") is a resident and citizen of Richmond, Virginia.

7.      To the best of Plaintiffs' information and belief, Defendant Versa Energy Partners ("Versa") is a corporation incorporated under the laws of Texas with its principal place of business in Texas.

8.      To the best of Plaintiffs' information and belief, Defendant Versa Bioenergia, LLC ("Versa-Bio") is a corporation incorporated under the laws of Texas with its principal place of business in Texas.

9.      Nicholas is the Managing Director of Versa.

10.     Klein is an Executive Director and the Chief Science & Technology Officer of Versa.

11.     Scott is an Executive Director of Versa.

12.     To the best of Plaintiffs' knowledge, Nicholas, Klein, and Scott are officers of Versa and Versa-Bio.

## JURISDICTION AND VENUE

13.     This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332.

14.     The amount in controversy, without interest and costs, exceeds $75,000.

15.     The parties are citizens of different States.

16.     Venue is proper in this judicial district pursuant to 28 U.S.C. §1391(b)(2) because a substantial part of the events giving rise to the Plaintiffs' claims arose here.

17.     Venue is also proper in this judicial district because this action involves assets and other property originally within Massachusetts.

18.     Corsini paid for Nicholas to travel to Massachusetts while working for GIVE.

19.     Nicholas and Corsini held business meetings at GIVE's principal place of business in Massachusetts.

20.     Corsini gave Nicholas access to GIVE's checking account during one of the aforementioned business meetings in East Dennis, MA.

21.     GIVE's account was with Bank of America, N.A., established in Yarmouthport, MA.

22.     Corsini made Nicholas one of GIVE's signatories on its checking account at the Bank of America office in Yarmouthport, MA and Nicholas withdrew money from this account.

## STATEMENT OF FACTS

### I.     The Parties' Initial Business Involvement.

23.     In 2005, Corsini founded GIVE to develop independent and renewable resource plantations to supply bio-based electricity and fuels through sustainable agriculture.

24.     On October 16, 2009, Corsini incorporated GIVE in the State of Delaware.

25.     Prior to incorporating GIVE, Corsini acted as a sole proprietor of GIVE.

26.     From 2005 to December 2012, Corsini invested his time and money into research, marketing, business development, proprietary information, and technology for GIVE.

27.     On or about February 1, 2010, Corsini engaged Klein's services at GIVE.

28.     On or about March 2, 2010, Klein signed a Consulting Agreement with GIVE as an independent contractor.

29.     The Consulting Agreement protected GIVE's proprietary information, which was defined

as "all information (whether or not patentable and whether or not copyrightable) owned,

possessed or used by the Company [i.e. GIVE]."

30.     Klein was prohibited from competing against GIVE pursuant to the Consulting

Agreement.

31.     Klein ultimately became the Chief Technology Officer for GIVE.

32.     Later in 2010, Nicholas contacted Corsini regarding "Green" resort development in

Greece and asked Corsini to travel to Greece to discuss business opportunities.

33.     Nicholas was the Chief Executive Officer for The Nicholas Group – a real estate

development company – in Palm Desert, California.

34.     While Corsini was in Greece, Nicholas stated that he wanted to learn GIVE's business

and become a partner in GIVE by investing a minimum of $500,000 USD in the company.

35.     Nicholas told Corsini that he would make his investment into GIVE by December 31,

2012.

36.     Nicholas told Corsini that his investment could not be made immediately as Nicholas was

in the middle of a lawsuit as a named plaintiff.

37.     Nicholas made multiple representations about the merits of the case and the close

proximity of a large settlement in that matter.

38.     Nicholas asked one of his attorneys in that litigation – Attorney Dugan Kelley of

Chrisman, Kelley & Clark, P.C. – to speak with and assure Corsini that Nicholas was pursuing

substantial damages and that the merits of the case were strong.

39.     Based on Nicholas' representations, Corsini advanced Nicholas and Nicholas' law firm

$35,000.00 USD to further that lawsuit.

4

40.     While visiting Corsini in Massachusetts on or about July 2010, Nicholas and Corsini entered into an oral agreement by which Nicholas would become an officer of GIVE, that Corsini would advance Nicholas money, and that Nicholas would repay all money received from Corsini or GIVE by December 31, 2012.

41.     On or about January 2011, Nicholas executed a promissory note to guarantee the money which Corsini or GIVE advanced. A true and correct copy of the Straight Note is attached hereto as Exhibit 1 and incorporated herein by reference. *See "Straight Note" attached as Exhibit 1; see infra at 16-18.*

42.     Nicholas served as the Chief Operating Officer ("COO") for GIVE.

43.     Nicholas introduced Scott to Corsini during the initial trip to Greece.

44.     Scott was paid selective expenses as a development advisor and consultant for GIVE for projects in Brazil and Greece.

**II.     GIVE's Renewable Energy Business in Brazil.**

45.     GIVE gave money to Nicholas, Klein, and Scott for their work in market development and/or research in Brazil on GIVE's behalf.

46.     On March 16, 2012, GIVE entered into a Memorandum Of Understanding ("MOU") with Interlex Consultoria Empresarial Participacoes e Servicos S.A. ("Interlex"), a Brazilian corporation, for the production of renewable energy in Brazil.

47.     Nicholas executed the MOU with Interlex on behalf of GIVE.

48.     Nicholas was directed by Corsini to sign the MOU as the COO of GIVE.

49.     Interlex is a holding company for land, farming, and mining rights on 27,000 hectares in Mato Grosso, Brazil.

50.     GIVE designed a 250 million liters ethanol plant and a 50 Mega-Watt ("MW") green-energy power plant using sweet sorghum, to be built in Mato Grosso, Brazil.

51.     Felicio Rosa Valarelli Junior ("Valarelli") is the trustee for Interlex and Alain Robson Borges ("Borges") is the owner-beneficiary of Interlex.

52.     Valarelli signed the MOU on behalf of Interlex.

53.     From March 2012 until December 1, 2012, GIVE was actively seeking institutional investors for the Mato Grosso project with Interlex.

54.     GIVE offered two investment opportunities – CLUSTER de BIOENERGIA (CLUSTER") and BRC Ethanol ("BRC") – that had an estimated future value ranging from $203 million USD to $789 million USD.

55.     Nicholas, Klein, and Scott participated in and were knowledgeable of the valuation of the CLUSTER and BRC investment opportunities.

56.     Corsini introduced Nicholas, Klein, and Scott to investment banker Jeffries and Company and other institutional investor prospects which Corsini developed on behalf of GIVE.

**III.    Defendants' Actions Against Corsini and GIVE.**

57.     Starting in the spring of 2012, Nicholas, Klein, and Scott took actions against Corsini and GIVE in order to take control and economic benefit of the Mato Grosso project, including the investment opportunities of CLUSTER and BRC.

58.     On or about April 2012, Corsini introduced a prospective business investor named Elhadj M. Kane ("Kane") to Nicholas and Klein.  Kane was a senior business advisor to Borges on the BRC project.

59.     Nicholas and Klein did not want to enter into a business relationship with Kane believing that it would dilute their expected interest in GIVE and the Mato Grosso project.

60.     Soon after meeting Kane, Nicholas engaged the services of Joe Marinko ("Marinko") to surveil Corsini and Kane.

61.     Marinko is a retired Special Agent for the Federal Bureau of Investigation.

62.     Marinko was the Vice President and Director of Communications for The Nicholas Group.

63.     Nicholas, Klein, and Scott were secretly disparaging Corsini's good name and reputation.

64.     On or about November 18, 2012, Nicholas requested that Corsini provide travel and pay Nicholas' expenses in order for Nicholas to meet with Jeffries and Company and to give Corsini a "positive update" on GIVE's projects in Brazil.

65.     On November 26, 2012, Corsini had a meeting with Nicholas, during which Nicholas stated that he, Klein, and Scott would no longer work for GIVE.  Nicholas mentioned that no business partner wanted to work with Corsini and that all of his contractors would be leaving him.

66.     Shortly after the November 26th meeting, Klein and Scott informed Corsini that they would no longer work for GIVE.

67.     Prior to Nicholas' resignation from GIVE, Nicholas made multiple, on-going representations to Corsini that the litigation for which Corsini had contributed financially was proceeding positively.

68.     Nicholas never mentioned that his counsel - Attorney Dugan Kelley - had withdrawn from the case on August 10, 2012.

69.     Nicholas has never informed Corsini whether the litigation was settled, was dismissed, or went to trial.

70.     Nicholas meanwhile withdrew and/or used over $200,000 USD from GIVE's checking account during this same period.

71.     Nicholas never planned on returning Corsini or GIVE the money advanced.

72.     Prior to the November 26th meeting, Nicholas, Klein and Scott caused and/or allowed negative information to be spread about Corsini to Valarelli and other business relations, Brazilian contractors, and prospective investors, against the interest of GIVE and Corsini.

73.     The negative information was calculated to cause harm to Corsini and GIVE.

74.     The negative information included false allegations that: (1) that Corsini was consorting with a fugitive (i.e. Kane); (2) that Corsini evidenced bad judgment to the detriment of GIVE's projects; and (3) that Corsini was not focusing on GIVE's investment in Brazil.

75.     Nicholas, Klein, and Scott secretly induced Valarelli and Interlex to disassociate with Corsini and to terminate the March 16th MOU with GIVE.

76.     Nicholas, Klein, and Scott wanted Interlex to break its contract with GIVE and to subsequently sign an agreement with them to the detriment of Corsini and GIVE.

77.     As of November 26, 2012, Nicholas, Klein, and Scott knew that the MOU had been terminated.

78.     Neither Nicholas, Klein, nor Scott informed Corsini that the MOU had been terminated.

79.     The MOU contained a specific penalty clause in Item 5 of the contract that awarded GIVE 350,000.00 Brazilian Real should Interlex terminate the contract.

80.     On December 1, 2012, Nicholas told Corsini: (1) that Nicholas intended to create a new corporation in the State of Texas to manage the BRC and CLUSTER projects; (2) that Nicholas would be in charge of selecting all officers and management; and (3) that Nicholas would have

final decision-making authority.  Nicholas told Corsini that he had no choice but to accept these new terms or lose all of his investment in Brazil.

81.     Corsini never accepted the terms proposed by Nicholas or the accuracy of Nicholas' assertions regarding the meeting on November 26, 2012 and telephone call on December 1, 2012.

82.      As of December 1, 2012, Corsini had no knowledge that the MOU with Interlex had been terminated.

83.     Corsini received a telephone call from Valarelli and Interlex sometime after December 1, 2012 in which Valarelli informed Corsini: (1) that Interlex could no longer work with GIVE; (2) that all of the contractors were convinced to work with Nicholas, Scott, and Klein; and (3) that the MOU had been terminated.

84.     On November 12, 2012, Nicholas and Valarelli had executed a Termination Agreement of the MOU. *See "Termination Agreement," attached as Exhibit 2.*

85.     The November 12th Termination Agreement specifically waived the 350,000 Brazilian Real payment owed GIVE. *Id.*

86.     Nicholas executed the Termination Agreement as COO of GIVE.

87.     Corsini never knew of nor gave Nicholas permission to terminate the MOU or to waive the 350,000 Brazilian Real payment owed GIVE.

88.     There was no economic benefit for GIVE or Corsini to terminate the MOU with Interlex.

89.     Nicholas, Klein, and Scott subsequently created Versa Energy Partners, LLC and Versa Bioenergia, LLC to take over GIVE's assets, employees, contractors, business contacts, prospective investors and expected profits with respect to the CLUSTER and BRC projects.

90.     Nicholas, Klein, and Scott entered into business agreements with Interlex following the formation of Versa and Versa-Bio.

**IV.     Defendants Misappropriate GIVE's Trade Secrets.**

91.     After Nicholas, Klein, and Scott terminated their business relationship with GIVE, Corsini demanded that all information, including but not limited to, research, marketing, agricultural trials, data, strategy, and other proprietary materials obtained while acting as agents or officers of GIVE, be returned.

92.     Nicholas, Klein and Scott kept all of GIVE's proprietary and confidential information for their benefit.

93.     Nicholas, Klein and Scott used GIVE's proprietary information as their own to create Versa and Versa-Bio.

94.     The Defendants published GIVE's proprietary information as their own.

95.     On December 5, 2012, Nicholas, Klein, and Scott reserved an internet domain name for Versa Energy Partners – versaenergypartners.com – with ICANN. *See "Whois versaenergypartners.com", attached as Exhibit 3.*

96.     Nicholas, Klein and Scott used GIVE's propriety information on Versa's website and the investment solicitation for Versa and Versa-Bio entitled "Investment Introduction." *See "Investment Introduction," attached as Exhibit 4.*

97.     Versa and Versa-Bio's business model mirrors that of GIVE, including the development of ethanol from sweet sorghum on plantations in Mato Grosso, Brazil. *Id.* at 2.

98.     Versa-Bio's valuation by Nicholas, Klein, and Scott was $40 million USD, or $4 million USD for 10% ownership of the company.

99.     Versa and Versa-Bio solicited GIVE's potential investors and business relationships.

100.    Scott called at least one of GIVE's business agents in Brazil, asking him to raise money

for Versa and Versa-Bio.

## STATEMENT OF CLAIMS

### Count I – Interference with a Business Relationship
### Against George Nicholas Jr., Daniel Klein-Marcuschamer, and Chris Scott
### Brought By All Plaintiffs

101.    Plaintiffs incorporate and reallege the foregoing paragraphs.

102.    Nicholas, Klein, and Scott knowingly induced GIVE's employees and contractors to

terminate their business involvement with the company.

103.    Nicholas, Klein, and Scott knowingly made false and disparaging comments about

Corsini and GIVE to Plaintiffs' clients, business relations and prospective investors.

104.    Nicholas, Klein, and Scott induced GIVE's client Interlex to disassociate with Plaintiffs.

105.    Nicholas, Klein, and Scott took the above actions for their own economic benefit, to take

control of GIVE's assets and trade secrets, and to appropriate Plaintiffs' advantage in the

renewable energy industry.

106.    The actions taken by Nicholas, Klein, and Scott caused Plaintiffs injury.

107.    Nicholas, Klein, and Scott are jointly and severally liable for the damages caused to

Plaintiffs.

108.    Plaintiffs ask the Court to award them compensatory and punitive damages in this action.

### Count II – Interference with a Contractual Relationship
### Against George Nicholas Jr., Daniel Klein-Marcuschamer, and Chris Scott
### Brought By All Plaintiffs

109.    Plaintiffs incorporate and reallege the foregoing paragraphs.

110.    Plaintiffs had a contract with Interlex for the development of bio-energy in Mato Grosso,

Brazil.

111.    Nicholas, Klein, and Scott knowingly induced Interlex and its officers to break the March 16, 2012 MOU with GIVE.

112.    At the time that Nicholas, Klein, and Scott knowingly induced Interlex to terminate its contract, the three were acting as agents of GIVE.

113.    Nicholas, Klein, and Scott made false and disparaging statements concerning Corsini to Interlex and Interlex's officers.

114.    Nicholas, Klein, and Scott induced Interlex to break the contract with GIVE for their own economic benefit, to take control of GIVE's assets and trade secrets, and to appropriate Plaintiffs' advantage in the renewable energy industry.  Nicholas, Klein, and Scott took these actions to ultimately receive the economic benefit for the CLUSTER and BRC projects – projects with valuations in the hundreds of millions of dollars.

115.    The actions taken by Nicholas, Klein, and Scott caused Plaintiffs injury.

116.    Nicholas, Klein, and Scott are jointly and severally liable for the damages caused to Plaintiffs.

117.    Plaintiffs ask the Court to award them compensatory and punitive damages in this action.

**Count III – Breach of Fiduciary Duty**
**Against George Nicholas Jr. and Daniel Klein-Marcuschamer**
**Brought By All Plaintiffs**

118.    Plaintiffs incorporate and reallege the foregoing paragraphs.

119.    Nicholas and Klein were fiduciaries of GIVE as corporate officers and agents.

120.    Nicholas and Klein were bound to exercise the utmost good faith with respect to GIVE and its business ventures in Brazil.

121.    Nicholas and Klein had fiduciary duties of undivided loyalty with respect to GIVE and its business ventures in Brazil.

122.    Nicholas and Klein breached their fiduciary duties of loyalty by using their positions of

trust and confidence to further their private interests.

123.    Nicholas and Klein, with the help of Scott, took affirmative steps to usurp GIVE's

business and trade secrets.

124.    The actions taken by Nicholas and Klein caused Plaintiffs injury.

125.    Nicholas and Klein are jointly and severally liable for the damages caused to Plaintiffs.

126.    Plaintiffs ask the Court to award them compensatory and punitive damages in this action.

### Count IV– Trade Secret Misappropriation
### Against All Defendants
### Brought By All Plaintiffs

127.    Plaintiffs incorporate and reallege the foregoing paragraphs.

128.    Nicholas, Klein, and Scott were agents of GIVE when they were exposed to GIVE's

confidential and proprietary information.

129.    Corsini invested not less than $500,000 USD for business development and research for

GIVE including agricultural trials, marketing, business and legal presentations, contracts, etc.

130.    Nicholas, Klein, and Scott had a duty not to disclose or to use without permission GIVE's

confidential and proprietary information.

131.    Nicholas, Klein, and Scott breached their duty not to disclose or use GIVE's proprietary

information.

132.    Corsini and GIVE took protective measures with their proprietary information including,

but limited to, marking documents as "confidential" and "strictly confidential."

133.    The proprietary information GIVE developed over its existence was very valuable in the

field of bio-energy and the green energy development.

134.    Nicholas, Klein, and Scott knowingly took GIVE's proprietary information, used the

proprietary information to create Versa and Versa-Bio, and published the proprietary information

as Defendants' own when seeking investment.

135.    Defendants used Plaintiffs' proprietary information directly against Plaintiffs by

competing in the same specific industry, within the same specific region of Brazil, regarding the

same specific investment opportunities solicited by GIVE.

136.    Nicholas, Klein, and Scott are directors of Versa and Versa-Bio.

137.    The Defendants solicited business and investment using GIVE's trade secrets consisting

of, but not limited to, research, marketing, scientific studies, tests, client lists and other materials.

138.    Versa and Versa-Bio's Investment Introduction specifically references research

conducted and paid-for by Plaintiffs without acknowledging GIVE.

139.    Versa and Versa-Bio mimic exactly the same business model of GIVE and its

subsidiaries.

140.    Defendants' Investment Introduction states that Versa completed research trials in Mato

Grosso, Brazil involving a sweet sorghum feedstock management program that confirmed sweet

sorghum as a viable energy producer in Brazil.

141.    These research trials were conducted while Nicholas, Klein, and Scott were agents and/or

officers of GIVE.

142.    These research trials were paid for by GIVE and Corsini.

143.    Defendants mailed their Investment Introduction to GIVE's current and former clients

and contacts.

144.    Defendants valued Versa-Bio as a $40,000,000.00 USD company, and offered 10%

equity ownership of the company for $4,000,000.00 USD.

145.    The actions taken by Nicholas and Klein caused Plaintiffs injury.

146.    Nicholas and Klein are jointly and severally liable for the damages caused to Plaintiffs.

147.    Plaintiffs ask the Court to award them compensatory and punitive damages in this action.

**Count V – Violations of the Massachusetts Consumer Protection Act (M.G.L. c. 93A, § 11)**
**Against All Defendants**
**Brought by All Plaintiffs**

148.    Plaintiffs incorporate and reallege the foregoing paragraphs.

149.    Versa and Versa-Bio engage in the same business as GIVE, in the same area as GIVE,
enlisting the services of GIVE's former agents and contractors, for the same specific investment
projects that GIVE initially developed.

150.    Defendants' conduct, in misappropriating GIVE's trade secrets and interfering with
Plaintiffs' business relationships both in Brazil and elsewhere, was extortionate in character and
undertaken as leverage to force Plaintiffs to accept Defendants' control of the CLUSTER and
BRC investment projects.

151.    Plaintiffs lost business as a result of Defendants' conduct and misrepresentations to
Interlex, former contractors, and other business associates.

152.    Defendants used the proprietary information of GIVE to solicit investment from the same
business contacts that Corsini and GIVE developed prior to the creation of Versa and Versa-Bio.

153.    Defendants knew when they published the Investment Introduction that they were citing
studies conducted and paid-for by GIVE.

154.    When Corsini learned of Versa and Versa-Bio's Investment Introduction from pre-
existing business contacts, he contacted Nicholas and Scott in January 2013 to address the
matter.

155.    Corsini was offered an 18%, undiluted, senior-preferred interest of Versa-Bio if he acquiesced to Defendants' conduct.

156.    Corsini never received this 18% share of Versa-Bio.

157.    Plaintiffs mailed Defendants a thirty-day demand letter, pursuant to M.G.L. c. 93A, on February 3, 2015. *See "30-Day Demand Letter" attached as Exhibit 5.*

158.    Defendants received Plaintiffs' demand letter.

159.    Defendants answered Plaintiffs' demand letter on April 10, 2015, rejecting Corsini's settlement demand.

160.    Plaintiffs' counsel and counsel for Nicholas, Klein, and Scott were not able to resolve this matter after multiple telephone conferences.

161.    By engaging in the aforementioned unfair and deceptive practices, Defendants violated M.G.L. c. 93A and injured Plaintiffs.

162.    Defendants' acts described herein jointly and severally caused Plaintiffs to suffer damages in an amount to be determined at trial.

163.    Defendants' act were deliberate, willful, intentional, wanton, malicious, and oppressive, and should be punished by an award of punitive damages in an amount to be determined at trial.

164.    Pursuant to M.G.L. c. 93A, Plaintiffs ask the Court to award them up to three but not less than two times their actual damages, statutory damages, reasonable attorney's fees, and the costs of this action.

**Count VI – Breach of Promissory Note**
**Against George Nicholas, Jr.**
**Brought by All Plaintiffs**

165.    Plaintiffs incorporate and reallege the foregoing paragraphs.

166.    Pursuant to the Note, Nicholas is required to pay the sum total of monies received from Corsini individually and GIVE on or before December 31, 2012 with interest at the rate of five percent (5%) per annum. *See Exhibit 1.*

167.    As of the date of the filing of this Complaint, the balance due and owing under the Note is an amount not less than $213,000.00, plus interest and fees accruing thereon.

168.    The Note provides that Nicholas waived presentment, demand for payment, protest, notice of demand, and all other notices and demands in connection with the delivery, acceptance, performance, default under, and enforcement of this Note.

169.    Nicholas did not make any payment to Corsini or GIVE on this Note.

170.    On or about February 3, 2015, Plaintiffs sent a demand letter stating that Nicholas is in default and demanding payment. *Exhibit 5.*

171.    Nicholas has defaulted on his obligations pursuant to the express terms of the Note by failing to tender to the Plaintiffs payment due under the Note as demanded.

172.    Plaintiffs have incurred attorneys' fees and expenses related to their collection efforts, including, but not limited to, continuing fees and costs incurred by prosecution of this legal action.  These costs and fees will continue to accrue until the amounts due and owing have been paid in full.

173.    Nicholas continues in breach of the Note.

174.    Plaintiffs respectfully requests that the Court enter judgment in its favor and against Nicholas, granting the following relief:

     a.      damages in the principal amount of $213,000.00;

     b.      accruing interest at a rate set forth in the Note;

     c.      post judgment interest pursuant to 28 U.S.C. § 1961;

d.      expenses, attorneys' fees, and other costs of collection; and

e.      such other and further relief as this Court deems just and proper.

### DEMAND FOR JUDGMENT

WHEREFORE, the Plaintiffs respectfully request that this Court enter judgment in their favor and against Defendants on Counts I through VI of the Complaint, and award them each all relief as allowed by law, including, but not limited to the following:

a.      Actual monetary damages as established at trial;

b.      Compensatory damages, including, but not limited to those for future pecuniary and non-pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses;

c.      Punitive damages for all claims as allowed by law in an amount to be determined at trial;

d.      Pre-judgment and post-judgment interest at the highest lawful rate;

e.      Attorney's fees, costs and expenses;

f.      Such other declaratory and equitable relief as appropriate; and

g.      Such further relief as justice requires.

### JURY TRIAL DEMAND

The Plaintiffs demand a trial by jury on each count so triable.

Dated: November 23, 2015

Respectfully submitted,

FRANK A. CORSINI, and
GIVE ECO ENERGY, LLC,

By: /s/ Emir Sehic

Emir Sehic, Esq. (BBO# 687938)
SEHIC LAW, PLLC
P.O. Box 2071
Dennis, MA 02638
Telephone: (774) 722-5517
Facsimile: (774) 221-6001
esehic@sehiclaw.com

*Counsel for the Plaintiffs*